# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

OMAR A. ALSOOFI,

                Plaintiff,                 CASE NO. 16-12604
                                        HON. DENISE PAGE HOOD

V.

STEVEN MNUCHIN, in his capacity as
Secretary of the United States
Department of Treasury,

                Defendant.

_____/

## ORDER GRANTING DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT [#41]

### I.    BACKGROUND

#### A. Procedural Background

On July 12, 2016, Plaintiff Omar A. Alsoofi ("Alsoofi") filed a Complaint against Defendant Secretary of the United States Department of Treasury (the "Government").  (Doc # 1)  This action arises out of events that occurred during Alsoofi's training to become a Criminal Investigator with the Internal Revenue Service ("IRS").  (Doc # 1, Pg. 3)  Alsoofi claims that he was discriminated against because of his national origin, race, or color in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*  (*Id.*)

Alsoofi requests damages for lost wages and reinstatement in the Criminal Investigator training program. (*Id.*)

Alsoofi was represented by an attorney when this action commenced. On April 11, 2017, Alsoofi filed a Motion to Remove Counsel. (Doc # 11) The Government did not oppose the Motion. (Doc # 12) The Court granted Alsoofi's Motion. (Doc # 13) Alsoofi proceeds on a *pro se* basis.

On March 20, 2018, Alsoofi filed a Motion for Leave to File Amended Complaint. (Doc # 30) The Court granted this Motion on August 16, 2018. (Doc # 35) Alsoofi filed his Amended Complaint on August 21, 2018. (Doc # 36) In his Amended Complaint, Alsoofi argued that he was also retaliated against by the Government in violation of Title VII. (Doc # 36, Pg. 3)

On November 30, 2018, the Government filed a Renewed Motion for Summary Judgment.[1] (Doc # 41) Alsoofi filed his Response on December 3, 2018. (Doc # 42) The Government filed its Reply on December 21, 2018. (Doc # 46) This Motion is currently before the Court. The Court held a hearing regarding this matter on May 1, 2019.

**B. Factual Background**

---

[1] The Government previously filed a Motion for Summary Judgment (Doc # 23), but the instant Motion for Summary Judgment is in response to Alsoofi's Amended Complaint (Doc # 36).

Alsoofi is an Arab-American.  (Doc # 36, Pg. 2)  He has been a revenue officer for the IRS since 2006.  (Doc # 41, Pg. 8)  On July 1, 2012, he began training to become a Criminal Investigator for the IRS.  (Doc # 1, Pg. 2)  Training was held at the National Criminal Investigator Training Academy ("NCITA") in Glynco, Georgia.  (*Id.*)  Alsoofi's first level supervisor during training at NCITA was Denise Scanlon ("Scanlon"), a Supervisory Academy Instructor ("SAI").  (Doc # 41, Pg. 8)  His second level supervisor was Domenic McClinton ("McClinton"), who was the Assistant Director of NCITA.  (*Id.*)  Alsoofi was one of 24 trainees in his training cohort.  (*Id.*)  Alsoofi asserts that he was the only trainee of Arab descent in his cohort, which lasted from July 1, 2012 until November 29, 2012.  (Doc # 1, Pg. 2)

The NCITA training program evaluated students on the basis of examinations and practical exercises.  (Doc # 41, Pg. 8)  Evaluations included multiple choice exams and other forms of assessment.  (Doc # 1, Pg. 2)  The training program also had a "three strike" policy regarding testing and practical exercises for trainees. (Doc # 1, Pg. 2; Doc # 41, Pg. 8)  If a trainee failed three of the examinations—either written exams or practical exercises, collectively—before completion of the program, it was considered a failure of three "critical job elements" and the trainee was removed from the training program.  (Doc # 41, Pg. 8)

A score lower than 80% on any of the examinations or practical exercises constituted a failure.  (Doc # 1, Pg. 2)  If a trainee failed an exam or practical

exercise, a second instructor reviewed the scoring to see whether the original grader should have added more points to benefit the trainee. (Doc # 41, Pg. 8) If a trainee failed a practical exercise, NCITA required that the trainee re-take or "remediate" the sections he or she failed in order to advance in the program. (*Id.* at 9.)

Alsoofi passed the first two parts of Criminal Investigator training. (*Id.*) The first practical exercise was called "Specific Item." (*Id.*) The exercise entailed analyzing documents and applying evidence to determine the amount of unreported income and additional tax due and owing by a taxpayer. (*Id.*) During November 2012, prior to the administration of the first practical exercise, Special Agent ("SA") Daniel Morris ("Morris"), an instructor for the course, presented a slide to the cohort displaying a picture of a camel in the middle of a parking lot. (*Id.* at 9-10.) Alsoofi claims that while displaying the picture, SA Morris asked the class how you can spot a terrorist. (Doc # 1, Pg. 2)

SA Morris was responsible for grading Alsoofi's Specific Item exercise. (*Id.*) On one section of the Specific Item exercise, Alsoofi scored a perfect thirteen out of a possible thirteen points, but was given a 97% on the section. (*Id.*) This error also occurred on two other Specific Item grade sheets completed by SA Morris for exercises taken by members of Alsoofi's cohort. (Doc # 41-6, Pgs. 2, 4) One of the exercises was taken by trainee LH, a black male, and the other was taken by trainee MW, a white male. (*Id.*) SA Morris scored Alsoofi's exam at 76.3%, a failing

score.  (Doc # 41, Pg. 10)  SAI Scanlon rescored Alsoofi's exam, and Alsoofi earned a score of 78.95%.  (*Id.*)  Had the error been corrected, Alsoofi's score on the exam would have been 79.05% instead of 78.95%.  (*Id.* at 12.)  As 80% is the required score for a passing grade, this was Alsoofi's first failure and his "first strike."  (*Id.*)  The other trainees who failed were: AG, a white man; PP, a black woman; NP, a white man; and GS, a white man.  (Doc # 41-2, Pgs. 62-71)

Alsoofi was downgraded by 3% on each section of the Specific Item exercise for formatting and spelling.  (Doc # 1, Pg. 3)  He was also penalized for overdocumentation, as were four of the five other students who failed the Specific Item exercise.  (Doc # 41-2, Pgs. 58-70)  Overdocumentation means that the trainee attached irrelevant exhibits to the exercise.  (Doc # 41, Pg. 11)  Alsoofi's deduction for overdocumentation was 11.1% of his overall score.  (Doc # 41-2, Pg. 58)  His deduction was not the highest, as trainee PP's overall deduction was 39.2% of her overall score on the exercise.  (*Id.* at 68-69.)

After receiving his first failing grade, Alsoofi spoke with the cohort advisor, JoAnne McLean ("McLean").  (Doc # 41, Pg. 12)  During the conversation, he told her his exercise results were "bullshit" and that he would not retake the exercise.  (*Id.*)  Alsoofi later spoke with SAI Scanlon about the exercise results.  (*Id.* at 12-13.)  Alsoofi told Scanlon that he preferred a multiple-choice format, at which time Alsoofi claims Scanlon told him the Criminal Investigator job was not for him.  (*Id.*

at 13.)  Scanlon indicated that the practical exercises were more closely aligned with the on the job duties of an IRS Criminal Investigator.  (*Id.*)  Alsoofi subsequently completed the remedial Specific Item exercise and passed.  (*Id.*)

Alsoofi took the second practical exercise later in November 2012.  The practical exercise was called Report Writing.  (*Id.*)  SA Denise Cole ("Cole") graded Alsoofi's Report Writing exercise.  (*Id.*)  Alsoofi earned a 75.4% percent score.  (*Id.*)  Greg Stuart, another instructor for the program, reviewed Alsoofi's exercise and gave it a score of 75.6%.  (*Id.*)  Alsoofi claims that he was downgraded for overwriting.  (Doc # 1, Pg. 3, ¶17)  Five trainees failed the failed the Report Writing exercise: (1) Alsoofi; (2) AG, a white man; (3) PP, a black woman; (4) NP, a white man; and (5) TW, a black man.  (Doc # 41, Pgs. 13-14)  Trainee PP earned the lowest score on the Report Writing exercise, at 74.6%.  (*Id.* at 14.)  This failure was Alsoofi's second "strike."  (*Id.*)

After his second failure, Alsoofi was allowed to retake the portions of the exercise he failed on November 28, 2012.  (*Id.*)  Alsoofi was allowed to "remediate" the sections titled "Books and Records," "Willfulness," and "Explanation and Defense of Subject."  (*Id.*)  Alsoofi was scored on the three sections he retook, and earned a score of 75.15%.  (*Id.*)  This failure was Alsoofi's third "strike."

Pursuant to the NCITA's "three strike" policy, SAI Scanlon briefed her supervisor, Assistant Director McClinton ("McClinton"), and recommended that

Alsoofi be removed from the training program due to his academic failure. (*Id.* at 14-15.) Between August 2009 and November 2016, Scanlon has recommended the removal of over 30 trainees from the NCITA program due to academic failure. (*Id.* at 15.) Scanlon once recommended the removal of a trainee who failed his third practical exercise with a score of 79.70%. (*Id.*)

Relying on Scanlon's recommendation, McClinton recommended Alsoofi's removal from the program to the Director of NCITA, Terry Stuart ("Stuart"). (*Id.*) On November 30, 2012, Stuart relayed McClinton's recommendation to Director of Strategy Charles Hunter ("Hunter"). (*Id.*) Hunter made the final decision to remove Alsoofi from the training program. The IRS arranged for Alsoofi to return to his former position as a revenue officer. (*Id.*) Alsoofi was placed in the Pontiac, Michigan office, but later returned to his original office location in Clinton Township, Michigan on March 10, 2013. (*Id.*)

From the original cohort of 24 trainees, only Alsoofi and trainee AG were removed from the training program for academic failure. (*Id.*) AG failed a written examination, the Specific Item practical exercise, and the Report Writing practical exercise. (*Id.*)

Alsoofi filed an Equal Employment Opportunity ("EEO") claim against the Department of Treasury, IRS, asserting that his removal was the result of discriminatory practices. (Doc # 41-2) The EEO process concluded on April 13,

2016.  (Doc # 4, Pg. 2)  Alsoofi subsequently filed this suit on July 12, 2016.  (Doc # 1)

## II.   ANALYSIS

### A. Standards of Review

#### 1. Summary Judgment

The Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986).  A fact is material if it could affect the outcome of the case based on the governing substantive law.  *Id.* at 248.  A dispute about a material fact is genuine if, on review of the evidence, a reasonable jury could find in favor of the nonmoving party.  *Id.*

The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant meets this burden, the nonmoving party must "go beyond the pleadings and … designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324.  The Court may grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case.  *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003).  "The

mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Conclusory allegations do not create a genuine issue of material fact which precludes summary judgment." *Johari v. Big Easy Restaurants, Inc.*, 78 F. App'x 546, 548 (6th Cir. 2003).

When reviewing a summary judgment motion, the Court must view the evidence and all inferences drawn from it in the light most favorable to the nonmoving party. *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

### 2. *Pro Se Litigants*

Federal courts hold *pro se* complaints to "less stringent standards" than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, *pro se* litigants are not excused from failing to follow basic procedural requirements. *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991); *Brock v. Hendershott*, 840 F.2d 339, 343 (6th Cir. 1988). A *pro se* litigant "must conduct enough investigation to

draft pleadings that meet the requirements of the federal rules." *Burnett v. Grattan*, 468 U.S. 42, 50 (1984).

## B. Title VII Claims

### 1. Discrimination

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16 provides that "[a]ll personnel actions affecting employees or applicants for employment . . . in executive agencies . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin." Unless direct evidence of discrimination is provided to support a Title VII claim, courts apply the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and subsequently modified in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination. *Id.* To establish a prima facie case of unlawful discrimination, a plaintiff must show: (1) he is a member of a protected group; (2) he was subjected to an adverse employment decision; (3) he was qualified for the position; and (4) he was replaced by a person outside the protected class, or a similarly situated non-protected employee was treated more favorably. *Corell v. CSX Transp., Inc.*, 378 F. App'x 496, 501 (6th Cir. 2010) (citing *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004).

Once the plaintiff has established a prima facie case, the burden shifts to the defendant to present a legitimate, nondiscriminatory basis for the adverse employment decision. *Corell*, 378 F. App'x at 501 (citing *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006)). If the defendant carriers that burden, the plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by [defendant] were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253. "Throughout this burden-shifting approach, the plaintiff continues to bear the ultimate burden of proving, by a preponderance of the evidence, the intent to discriminate." *Wright*, 455 F.3d at 707 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)).

In the present case, neither party disputes that: (1) Alsoofi is a member of a protected class; (2) suffered an adverse employment decision; and (3) was qualified for the training program. The only dispute is whether Alsoofi can show the presence of the fourth element needed to establish his prima facie case. The Government argues that Alsoofi cannot show that a similarly situated employee outside of his protected class was treated more favorably than him. Alsoofi argues that the grading of his exams shows that other members of the cohort were treated more favorably than him. The Court finds that Alsoofi has not established that a similarly situated employee outside of his protected class was treated more favorably than him.

Alsoofi was one of five trainees who failed the Specific Item practical exercise. The other four students were three white men: trainees AG, NP, and GS; and one black woman: trainee PP. Alsoofi was also one of five trainees who failed the Report Writing practical exercise. The other four trainees were two white men: trainees NP and AG; a black woman: trainee PP; and a black man: trainee TW. In addition, Alsoofi is one of only two trainees who failed three exams. The other was AG, who Alsoofi claims is a white man. Viewing the facts in the light most favorable to Alsoofi, there is no indication that he was treated differently regarding the number of failed exams or consideration for removal from the program due to academic failure.

Alsoofi directs the Court to the grading of his practical exercises to support his theory of disparate treatment. He claims that the scoring of his Specific Item practical exercise, in light of SA Morris's offensive comments and SAI Scanlon's comment regarding his suitability for the job, support a finding of disparate treatment. The Government argues that the evidence provided does not support Alsoofi's conclusions. Again, the Court finds that Alsoofi has not established that a similarly situated employee outside of his protected class was treated more favorably than him.

Alsoofi scored a perfect thirteen out of thirteen on a section of the Specific Item practical exercise, and somehow received a 97% on the section. Alsoofi claims

that he was the only person impacted by the apparent mistake in scoring. (*Id.* at 3.) He also adds that he was the only trainee who failed the Specific Item practical exercise to receive an average 3% deduction for spelling, logical flow, and formatting on each section of the exam. (*Id.*) He further adds that trainee NP received more favorable treatment than him in the scoring of Appendix A-7 of the Specific Item practical exercise. (*Id.*) Alsoofi claims that these facts support a conclusion that SA Morris made a deliberate attempt to fail him for the assignment.

The facts do not support Alsoofi's assertions regarding SA Morris's grading. Alsoofi was not the only trainee impacted by the mistake in scoring on sheets graded by SA Morris. Two other grade sheets submitted by SA Morris had the same error, and those two trainees received passing scores. (Doc # 41-6) SAI Scanlon testified that different instructors could download different templates, which would lead to mistakes in scoring. (Doc # 41, Pg. 41) Alsoofi directs the Court's attention to trainee PP's scoring for the exam, on which she received 100% for her perfect score of thirteen out of thirteen points on the section. (Doc # 42, Pg. 6) Trainee PP's Specific Item practical exercise was graded by "Faulkner," not SA Morris. (Doc # 24-3, Pg. 7) Of the five students who received failing scores on the Specific Item practical exercise, only two of them were graded by the same instructor.

Alsoofi did have the most percentage points deducted for spelling, logical flow, and formatting, at an average of 3%. Trainee PP and Trainee GS also each

averaged 1% deductions for spelling, logical flow, and formatting on each section. (Doc # 24-3, Pgs. 7, 9)  Alsoofi, trainee PP, and trainee GS's exams were graded by different instructors.

Alsoofi's claims regarding the scoring of Appendix A-7 are also unsupported. Appendix A-7 contains a documentation section worth a total of fourteen points. (Doc # 24-3)  Trainees could receive a deduction in points for "blocks missed" and a maximum deduction of seven points for "overdocumentation."  (*Id.*)  Alsoofi received a six-point deduction for blocks missed, and a four-point deduction for overdocumentation, for a total ten-point deduction.  Alsoofi's total points earned for Appendix A-7 was four points.  Trainee NP also received a six-point deduction for blocks missed, but only received a one-point deduction for overdocumentation, for a total seven-point deduction.  (*Id.*)  Trainee NP's total points earned for Appendix A-7 was seven points.

Alsoofi's analysis of the scoring for the section evidences some confusion. He claims that his additional four-point deduction for overdocumentation was the "maximum amount of points deducted allowed," however, the grade sheet clearly states that a trainee could receive a maximum deduction of seven points for overdocumentation on Appendix A-7.  (Doc # 24-3)  Alsoofi also asserts that he should have received a one-point deduction for overdocumentation, as he and trainee NP missed the same number of blocks on the exam.  That assertion is unsupported.

The grade sheets of Alsoofi, trainee NP, trainee AG, trainee GS, and trainee HL all indicate that there was no correlation between the number of blocks missed and the number of points deducted for overdocumentation. (Doc # 24-3; Doc # 41-6)  In addition, Alsoofi and NP's grade sheets were graded by different instructors. Alsoofi's claims regarding his mastery of the material covered on the exam for the Specific Item practical exercise are inconsequential.

Alsoofi claims that SAI Scanlon's comment, "this job is not for you, all we do is memorandum of interviews and interviews," evidences his unfair treatment. That remark, however, was made in response to Alsoofi's comment that he would be better served by taking only multiple-choice exams. (Doc # 41-2)  Scanlon also went on to explain the responsibilities of a Criminal Investigator for the IRS, and how the required exercises related to the job description. (*Id.*)  Scanlon did not make that comment to any other student. (Doc # 42, Pg. 4)

On the second practical exercise, called Report Writing, Alsoofi received a score of 75.4% after grading by SA Cole.  After review by Greg Stuart, Alsoofi's score was upgraded to 75.6%.  Five trainees failed the Report Writing exercise; Alsoofi, trainee AG, trainee PP, trainee NP, and trainee TW.  (Doc # 41, Pg. 13)  Trainee PP earned the lowest score on the Report Writing exercise, at 74.6%.  (Doc # 41-2, Pg. 70)  Alsoofi again claims he had the most points deducted from his exam. That assertion is incorrect.  Alsoofi had the most points deducted for the "General

Grading box total - Max 5" category, but trainee PP had the most points deducted for the exercise. Alsoofi also provides a number of conclusory statements regarding the state of mind of the graders, and questions their experience level. The Court will not address those arguments as they are merely speculative and unsupported by the facts provided.

In his attempt to remediate the portions of the Report Writing practical exercise he failed, Alsoofi earned a score of 75.15%. He was the only person given a chance to remediate the exercise who failed at remediation. Alsoofi highlights that his remediation exercise was the only one graded by SAI Scanlon, but does not claim that the other exams were graded by the same instructor. He asserts that this establishes disparate treatment. (Doc # 42, Pg. 6) Alsoofi bases this assumption on his suspicions about SAI Scanlon, but has not provided specific facts evidencing any favorable or disparate treatment.

Viewing the facts in the light most favorable to Alsoofi, he has failed to raise a genuine issue of material fact sufficient to establish a prima facie case for unlawful discrimination.

Even if Alsoofi had established a prima facie case of unlawful discrimination, he has failed to raise a material issue of fact regarding the pretext inquiry. The Government argues that Alsoofi has not shown his removal from the Criminal Investigator training program for academic failure was pretext for unlawful

discrimination.  Alsoofi argues that proper procedures and protocols were not followed when he was removed from the training program, which is evidence of pretext.

A plaintiff can establish pretext "by showing 'that the employer's stated reason for the adverse employment action either (1) has no basis in fact, or (2) was not the actual reason, or (3) is insufficient to explain the employer's action.'" *Hill v. Solis*, 362 F. App'x 538, 540 (6th Cir. 2010) (citing *White v. Baxter Healthcare Corp.,* 533 F.3d 381, 393 (6th Cir.2008)).

After a defendant has provided a legitimate, nondiscriminatory reason for its action, the plaintiff does not need to produce additional evidence. *Blair v. Henry Filters, Inc.,* 505 F.3d 517, 532, 533 (6th Cir. 2007).  The evidence provided to establish a prima facie case may suffice to establish a genuine issue of material fact concerning the pretext inquiry.  *Id.*  In the employment context, relative qualifications may create a triable issue of fact regarding pretext.  *Hill*, 362 F. App'x at 540.  If the evidence shows (1) plaintiff's qualifications "were so significantly better than the successful applicant's qualifications that no reasonable employer would have chosen the latter over the former," or (2) the plaintiff was "as qualified as or better qualified than the successful applicant"; and there is "other probative evidence of discrimination," a triable issue of fact may exist regarding pretext. *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627-28 (6th Cir. 2006).

Alsoofi was removed from the training program for academic failure. Trainee AG was also removed for the same reason. Alsoofi does not claim that any of the other trainees in his cohort failed three exams. He does not claim that he is more qualified than any of them. He does not claim that his academic failure was not a legitimate reason for removal. He merely asserts that he should not have failed any exams. He also relies on his belief that the proper procedures and protocols were not followed by NCITA when he was removed from the training program, citing *Kouvchinov v. Parametric Tech. Corp.*, 537 F.3d 62, 69 (1st Cir. 2008).

Alsoofi argues that it was standard practice for trainees to meet with Assistant Director McClinton before being removed from the training program. Alsoofi bases this conclusion on the notification of failure form, which states that a review of the facts surrounding academic failure would include a discussion with Alsoofi. SAI Scanlon partially agreed with that interpretation. (Doc # 41-4) Scanlon also added that it was common practice for students removed from the training program to leave without speaking with McClinton. (*Id.*)

In *Kouvchinov*, the First Circuit stated, "[w]e agree with plaintiff that pretext can be demonstrated through a showing that an employer had deviated inexplicably from one of its standard business practices." *Kouvchinov*, 537 F.3d at 69. The court also added that the rule did not apply in that case, however, because plaintiff did not produce any "competent evidence" that the employer had a standard policy or

practice of listening to an employee's side of the story before discharging them. *Id.*
In the present case, Alsoofi has not provided the Court with evidence that trainees
typically met with the Assistant Director before being removed from the training
program. SAI Scanlon's remarks, which have been presented by Alsoofi, evidences
a finding that discussions took place on a case-by-case basis.

Alsoofi has failed to raise a genuine issue of material fact regarding pretext.

## 2. Retaliation

Alsoofi argues that he was retaliated against for engaging in three activities.
To establish a prima facie case of retaliation under Title VII, a plaintiff has the initial
burden of establishing four elements: (1) the plaintiff engaged in protected activity;
(2) the defendant knew about the plaintiff's exercise of this right; (3) the defendant
took an employment action adverse to the plaintiff; and (4) the protected activity and
the adverse employment action are causally connected. *Gribcheck v. Runyon*, 245
F.3d 547, 550 (6th Cir. 2001). If the plaintiff establishes a prima facie case, the
burden of production shifts to the employer to offer a legitimate, non-discriminatory
reason for its action. *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir.
2008) (citation omitted). If the employer meets that burden, it is the plaintiff's
burden to demonstrate, by a preponderance of the evidence, that the legitimate
reason given by the employer was pretext for retaliation. *Id.*

First, Alsoofi claims that the Government retaliated against him for filing a workers' compensation claim with the Department of Labor after suffering an injury that occurred while he was training. Alsoofi contends that filing a workers' compensation claim resulted in the Government showing animus towards him. The Government responds by arguing that courts have held that filing a workers' compensation claim is not considered to be "protected activity" under Title VII, and therefore, Alsoofi's retaliation claim must be dismissed. The Sixth Circuit has held that filing a workers' compensation claim is not a protected activity under Tittle VII, and Alsoofi cannot succeed with his Title VII retaliation claim on this ground. *See Primm v. Dep't of Human Servs.*, No. 16-6837, 2017 WL 10646487, at *3 (6th Cir. Aug. 17, 2017).

Second, Alsoofi alleges that the Government retaliated against him for complaining about the discriminatory grading practices of the training program. He claims that he articulated during his training that he was dissatisfied about the grades he received, which he believes led to his ultimate removal from the training program. Alsoofi further supports his argument by arguing that McLean even said that "[b]ased on the things he would say I got the impression that he felt he was being targeted." (Doc # 42, Pgs. 12-13) The Government responds by arguing that although Alsoofi complained about his grades, he never expressly said that he was being discriminated against. It is the Government's contention that since Alsoofi

failed to state that he suffered actual discrimination, he cannot satisfy the first prong of the Title VII retaliation analysis—engaging in a protected activity.

Protected activity, for purposes of satisfying the first prong of the Title VII retaliation analysis, has been classified as falling under one of two categories: (1) when an employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under [Title VII]", the participation provision; or (2) when an employee has "opposed any practice" made unlawful under Title VII, the opposition provision. 42 U.S.C. § 2000e–3(a). Here, Alsoofi only alleges that he opposes the Government's practices. A plaintiff's Title VII retaliation claim based on the "opposition provision" must put "her employer on notice that her complaint concerns statutory rights." *Brown v. VHS of Michigan, Inc.,* 545 F. App'x 368, 373 (6th Cir. 2013). Vague charges of discrimination will not suffice. *See Booker v. Brown & Williamson Tobacco Co., Inc.,* 879 F.2d 1304, 1313 (6th Cir.1989).

The Court finds that Alsoofi has not met the first prong of the Title VII retaliation analysis because he never "opposed any practice" that he alleged violated his statutory rights. The facts do not demonstrate that Alsoofi ever told the Government that he felt he was being mistreated because he was an Arab-American. Alsoofi's claim of discrimination made to the Government was vague, and therefore,

his retaliation claim that is premised on his complaints about the alleged discriminatory grading practices fails.

Third, Alsoofi contends that he faced retaliation from the Government for contacting the EEO. According to Alsoofi, after he spoke with his supervisor, Terry Lehman ("Lehman"), about the issues he was having in the workplace, Alsoofi told Lehman that he filed an EEO complaint. After this interaction, Alsoofi was transferred from his POD in Detroit, Michigan to a POD located in Pontiac, Michigan, which Alsoofi claims is 37 miles away from his residence. He claims this constitutes a retaliatory action taken against him. Alsoofi also contends that he was retaliated against in the form of "being treated like a criminal," while in Pontiac because he at one point had an issue logging into the IRS system and was initially not allowed into the criminal investigator area. He also claims that he was the only person in his group that had to call his supervisor, Marta Jacks, to let her know that he was leaving for the day.

The Government argues that courts have determined that a mere transfer to another location is not considered to be an adverse employment action. The Government also dismisses Alsoofi's argument that he was treated poorly and argues that the alleged retaliatory actions are not materially adverse. Consequently, the Government argues that Alsoofi cannot meet the third prong.

The Court agrees that Alsoofi cannot meet the third prong because a reasonable person would not have found the actions taken by the Government against him—allegedly in response to his filing an EEO complaint—to be materially adverse. *See Laster v. City of Kalamazoo*, 746 F.3d 714, 718 (6th Cir. 2014). For one, as the Government asserts, the act of transferring an employee is not necessarily indicative of a finding of retaliation. "Reassignments and position transfers can qualify as adverse employment actions, particularly where they are accompanied by "salary or work hour changes." *See Spees v. James Marine, Inc.,* 617 F.3d 380, 391 (6th Cir. 2010). "[E]ven if a reassignment is not paired with a salary or work-hour change, it can nonetheless be considered an adverse employment action where there is evidence that the employee received "a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.* (citing *Kocsis v. Multi-Care Mgmt., Inc.,* 97 F.3d 876, 885 (6th Cir. 1996)). Alsoofi has not established or claimed that his transfer from Detroit, Michigan to Pontiac, Michigan led to any salary or work hour changes or any change in his status. Therefore, Alsoofi's transfer from one work location to another is not a material adverse action for purposes of his Title VII retaliation claim.

The Court also finds that no reasonable person could believe that the other actions allegedly taken against Alsoofi are materially adverse. Alsoofi's complaints

about initially not having access to the IRS system or the criminal investigator area are frivolous. These issues were temporary problems and Alsoofi has not given the Court sufficient facts to support his argument that they were materially adverse in any way. Further, the Court also does not agree that it would be considered materially adverse for a supervisor to ask an employee to alert her when he is leaving for the day. The incidents that Alsoofi asks for the Court to determine are *materially adverse* are nothing more than routine work occurrences. Consequently, his claim fails.

While only mentioned by Alsoofi in his Response to the instant Motion, he also claims that the Government retaliated against him after he had a conversation with student, Nathan Pavel ("Pavel"), during which he was asked to file a joint EEO claim. Alsoofi contends that he did not express to Pavel whether or not he would join him in filing an EEO claim, but was removed from the training program weeks after their conversation took place. The Court finds that this claim fails because Alsoofi never alleges that the Government knew that this conversation transpired, which is required for him to make out his prima facie case for a Title VII retaliation claim.

### 3. Hostile Work Environment

During preparation for the Specific Item practical exercise, SA Morris asked the class how one could spot a terrorist while the agent displayed a picture of a camel

in a parking lot.  (Doc # 42, Pg. 2)   SA Morris displayed the picture in multiple classes.  (*Id.*)  On at least one occasion when SA Morris showed the class the picture, it caused the students in the class to erupt in laughter.  (*Id.*)  Alsoofi claims that this evidences that he suffered from working in a hostile work environment.   (*Id.*)  In response, the Government argues that there is no evidence that Alsoofi reported these instances to any instructor or supervisor, and did not raise the issue until he was involved in the EEO process.  (Doc # 41, Pg. 10)

To establish a prima facie case of racial discrimination based on a hostile work environment, a plaintiff must show that: (1) the plaintiff was a member of a protected class; (2) the plaintiff was subjected to unwelcome harassment; (3) the harassment was based on race, (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an environment that was intimidating, hostile, or offensive; and (5) the employer knew or should have known about the harassing conduct but failed to take corrective action.  *Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 511 (6th Cir. 2011).  All of the circumstances must be looked at in order to determine whether an environment is hostile or abusive for purposes of the fourth element.  *Id.*

The Court finds that Alsoofi's claim fails because he cannot meet the fourth and fifth prongs.  Alsoofi has not presented any evidence showing that the offensive

slide shown in several classes constitutes severe or pervasive conduct. But, even if Alsoofi presented additional facts to establish that the conduct was severe or pervasive, he has not presented the Court with evidence showing that his employer knew about the conduct at issue and failed to take action.[2] Based on the facts, the only individuals who knew about the offensive conduct were his classmates and SA Morris.

## III.   CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Defendant's Renewed Motion for Summary Judgment (Doc # 41) is **GRANTED**.

IT IS FURTHER ORDERED that this action is **DISMISSED** with prejudice.

s/Denise Page Hood
DENISE PAGE HOOD
DATED: August 22, 2019                  United States District Judge

---

[2] Although case law dictates that the slide and comments referenced do not rise to discrimination based on a hostile work environment theory, they might be in other instances. The Court also notes that in the very least, in this instance, the visual display was offensive.